STATE OF IOWA, Appellee, v. DOMINICK CRIETELLO, Appellant.

CRIMINAL LAW: Responsibility for Crime—Intoxication. The issue
1 of intoxication need not be submitted when the evidence is wholly insufficient to show by a preponderance that the accused was so intoxicated as to be incapable of forming a specific intent.

CRIMINAL LAW: Responsibility for Crime—Insanity—Nonofficial
2 Records. Records prepared and kept by the authorities in charge of the state hospitals for the insane or by the board of control of state institutions, *but not required by law to be so kept,* are inadmissible as evidence on the issue of insanity.

CRIMINAL LAW: Argument—Excluded Evidence. Counsel has no
3 right, in argument, to indulge in explanations based on excluded testimony.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

APRIL 1, 1924.

DEFENDANT was indicted by the grand jury of Polk County, Iowa, for the crime of murder in the first degree. Upon trial, verdict of guilty was returned, and judgment entered thereon, sentencing him to life imprisonment in the penitentiary at Fort Madison, Iowa. Defendant appeals.—*Affirmed.*

*Tomlinson & Maley* and *Thurlow T. Taft,* for appellant.

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *Vernon R. Seeburger,* County Attorney, for appellee.

DE GRAFF, J.—The indictment charged murder in the first degree. The sufficiency of the evidence to sustain the indictment is not questioned. It is unnecessary to recite the revolting

1. CRIMINAL LAW: responsibility for crime: intoxication.

facts disclosed by the record, as it would simply add a gruesome chapter to the literature of crime. This is not the function of judicial opinion. Two affirmative defenses were interposed: intoxication and insanity. The evidence is clearly insufficient to warrant a submission of the question of intoxication to the jury. Immediately after the homicide, the deputy sheriff found defendant in the act of destroying the evidences of the crime. There was blood on his clothing and on his person. One of the deputies asked him if he had been fighting with somebody. He gave an affirmative reply. When asked where his antagonist was, he said he "had gone out the back door and up the alley;" that the man was a stranger, and when he told him to get out of the house, he didn't go, so he tried to put him out. At that very moment, the dead body of J. H. Johnson was lying at the foot of the cellar steps. Deputy Sheriff Wilfon testified that, at the time of Crietello's arrest, the defendant had been drinking. "He was not drunk. He was not so intoxicated that he didn't know what he was doing."

Upon his being brought to the jail, the turnkey stated that he had a liquor breath.

"I would not call him intoxicated. He could handle himself as good as I can."

The burden was on the defendant to show that he was so far intoxicated at the time of the commission of the crime as to be incapable of forming a specific intent. *State v. Harrison,* 167 Iowa 334. We are abidingly satisfied that the evidence fails to show that the defendant was so drunk that he was incapable of forming an intent to do the act for which he was indicted and convicted.

Appellant's second proposition concerns itself with the admissibility of certain evidence involving the records of the state insane hospital and the state board of control. Defendant had

2. CRIMINAL LAW: responsibility for crime: insanity: nonofficial records.

been committed to the insane hospital at Independence from Polk County in February, 1919. The crime for which he was indicted was committed on July 8, 1922. He escaped from the insane hospital July 25, 1920. Dr. Stewart, the superintendent in charge, testified as a witness for the defense that he was of the opinion that Crietello was of unsound mind while confined in the hospital. Evidence was introduced on behalf of the State and the defendant, bearing on the question of defendant's insanity, and the trial court clearly defined this issue in the instructions. Among other things, the jury was told that:

"Where a condition of insanity is once shown to exist, it is presumed to continue until the contrary is shown and the presumption is overcome and rebutted by the State and the sanity of the defendant established, as applied to the time of the commission of the crime."

It appears from the record that the personal history of the patient was obtained·by the hospital authorities at the time of his commitment, and that this information was made a matter of record, as well as the opinions of the hospital examiners as to his mental condition at that time and subsequent thereto, while he was a patient. The exhibit containing this data is known in the record as Exhibit 3. Dr. Stewart was the only witness from the institution offered by the defendant. He had no personal knowledge concerning the record sought to be introduced. Unless it may be said that the records or memoranda in question were made pursuant to the requirements of statute, so that they may be denominated public records, or were made pursuant to official duty, as required by statute, they do not fall within the rule making them admissible. To determine this question, recourse must necessarily be had to the statute. It will be borne in mind that these records have nothing to do with the inquisition as to the sanity of the defendant, and upon which the commitment of the defendant was made. Code Section 2261 *et seq.* Under the statute, the first record in connection with an inquisition of sanity is made through the office of the clerk of

the district court.   This is the first and original record, and
whatever is recited therein is clearly admissible in evidence, as a
public record.   Another provision of the statute (Section 2727-
a22, Code Supplement, 1913) requires the keeping of a record in
the office of the board of control, showing the residence, sex,
age, nativity, occupation, civil condition, and time of entrance
or commitment of every person, patient, or inmate in the sev-
eral institutions governed by the board of control, and also the
date of discharge of each such person from the institution, and
whether such discharge was final, and the condition of the person
at the time he left the institution.   The information required
by this section and incorporated in the record to be kept by the
board of control is furnished by the manager or superintendent
of the several institutions under its control.   It is apparent that
the record kept in the office of the hospital for the insane and
the record kept by the board of control are mere copies of the
record made by the secretary of the insanity commission in the
county of residence of the patient or inmate named in the rec-
ord.   It may be stated incidentally that no effort was made by
the attorneys for the defendant to offer or introduce in evi-
dence any of the proceedings in connection with the inquisition
as to the sanity of the defendant in Polk County which were
on file in the office of the clerk of the court.   Another statutory
provision in this connection recites that the record kept in the
office of the board of control shall be accessible only to the
members, secretary, and proper clerks, except by the order of
the board or on the order of a judge or a court of record.   No
showing of this character was made, except that one of the rec-
ords to which an objection was made was in the hands of the
secretary of the state board of control, who was called as a wit-
ness upon the trial.   The statute does not require the hospital
superintendent or anyone connected with the institution to keep
a daily record of a patient.   It does require that he keep a rec-
ord of the commitment and certain facts in connection there-
with.   For this reason it must be said that the records sought
to be introduced were not official or public records.   Further-
more, the evidence does show that the defendant was committed
to the hospital as an insane person; that he escaped therefrom
without being discharged; and that, in the opinion of the then

superintendent of the hospital, he was of unsound mind. In
the light of the record, no prejudice resulted to the defendant
by excluding certain details of his personal history prior to the
time he was committed, and which must have been learned from
the defendant himself, together with certain facts having a bear-
ing on his physical appearance, appetite, weight, conversation,
and physical activities. We have given this phase of the record
a careful consideration, and conclude that the court properly
ruled the objections made by the State to the records offered.
It is not the province of an appellate court to reverse a criminal
case on matters purely technical.

Certain instructions were requested by the defendant on
the question of sanity, but, so far as the same were relevant to
the issues, they were fully covered by the court in the instruc-
tions given.

It further appears that the attorney for the defendant in
his opening statement outlined the defenses to the crime charged,
and informed the jury that he expected to prove that the de-

3. CRIMINAL LAW:
argument: ex-
cluded evidence.

fendant was suffering from a type of insanity
known as *dementia præcox*. The evidence re-
lied upon was found in one of the hospital re-
ports which was sought to be introduced, and to which objec-
tions by the State were sustained, and properly so. Upon argu-
ment, counsel for the defendant attempted to comment and ex-
plain to the jury the reasons why they were unable to prove
that the defendant was afflicted as outlined in the opening state-
ment. To this argument the prosecuting attorney objected, and
the court, in passing thereon, stated that any reference by coun-
sel to testimony or matters that were excluded by ruling of the
court was "improper comment and argument to the jury." To
this remark counsel for the defendant replied:

"Now, in answering Mr. Rippey in his statement to the
jury, I believe I have a right to state and tell you why no evi-
dence along that line was permitted or introduced."

Again the court admonished counsel to confine himself to
matters within the record. It is quite apparent that no error
can be predicated on the ruling.

The rights of the defendant were properly protected on the
trial of this cause. The defendant was justly convicted of a

crime committed in a most brutal manner. The judgment entered is—*Affirmed.*

ARTHUR, C. J., STEVENS and VERMILION, JJ., concur.